## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

RECEIVED
IN CLERK'S OFFICE

MAY 22 2014

U. S. DISTRICT COURT
MID. DIST. TENN.

|                            |   |                                |
|----------------------------|---|--------------------------------|
| **FRANK NEAL**             | ) |                                |
|                            | ) |                                |
| **Plaintiff,**             | ) | **No. 3:14-cv-00216**          |
| **v.**                     | ) |                                |
|                            | ) | **Judge Nixon**                |
| **WHITE CASTLE SYSTEM, Inc.,** | ) | **Magistrate Judge Bryant**    |
|                            | ) |                                |
| **Defendants.**            | ) |                                |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### I. INTRODUCTION

1.      This is a complaint pursuant to Title VII of the Civil Rights Act, 42 U.S.C. 2000e et seq., the Age Discrimination in Employment Act, 29 U.S.C. 621 et seq. And the Tennessee Human Rights Act T.C.A. 4-21-101 et seq. To redress discrimination on the basis of race and age, and for retaliation. Plaintiff seeks statutory remedies for the violations of the law as alleged herein.

### II. JURISDICTION AND VENUE

2.      This court has jurisdiction pursuant to 28 U.S.C. 1331 and 29 U.S.C. 626(c). Venue is proper in accord with 28 U.S.C. 1391 as the events complained of occurred within this District. The court has supplemental jurisdiction of plaintiff's state law claims pursuant to 28 U.S.C. 1367 (a)

3.      Plaintiff has exhausted his administrative remedies: he filed a timely claim with the EEOC and received his notice of suit rights on or about December 19, 2013.

Case 3:14-cv-00216   Document 33   Filed 06/03/14   Page 1 of 8 PageID #: 84

4.     Plaintiff Frank Neal is a citizen and resident of Lebanon, Wilson County, Tennessee. From December 1, 2005 until April 12, 2013, Plaintiff was employed by the Defendant. His date of birth is May 20, 1967.

5.     Defendant, White Castle System, Inc. is a corporation licensed to do and doing business in Tennessee operating ten restaurants in the Nashville, Tennessee Region including at least one in Lebanon, Wilson County, Tennessee, where Plaintiff Frank Neal was employed.

### III. FACTUAL BACKGROUND

6.     On or about December 1, 2005, Plaintiff was hired as a crew manager for Defendant's restaurant located on South Cumberland Street in Lebanon, Tennessee. Plaintiff remained in that position at that location until his termination on or about April 12, 2013.

7.     For the first several years of his employment, Plaintiff encountered no problems. He received good reviews of his work and enjoyed regular increases in pay from $10.13 per hour when he began to $13.13 when he was terminated.

8.     After several years of his employment, Plaintiff's restaurant underwent a change in General Managers. Michelle Shoemake, a white female, was named the new General Manager. At the time of Ms. Shoemake's installation as General Manager of the Defendant's restaurant in Lebanon, Tennessee, an African- American woman and her daughter both worked in that restaurant. Ms. Shoemake caused the African-American daughter to be transferred to another restaurant citing an alleged rule that precluded immediate family members from working together

9.     Ms. Shoemake made racist remarks in the presence of Plaintiff such as "too many of them in here" (referring to African- Americans) "they trying to take over".

10.     Despite such alleged rule that family members are not allowed to work together at the same location, which caused the African-American Mother and Daughter to be separated, Ms. Shoemake hired the brother of a white female employee and allowed both to work in the Lebanon, Tennessee restaurant.

11.     Plaintiff was treated inferior to the younger white employees, in that the younger white female was permitted to act unethical in front of employees and customers, cursing in the presence of both employees as well as customers, and closing the restaurant substantially sooner than the appropriate closing time and using racist and degrading slurs, insults, jokes and other verbal comments of a discriminatory nature near the presence of and directed at the Plaintiff with impunity.

12.     Plaintiff perceived the working environment as abusive and hostile, making it extremely difficult to stay and hold down the job that he had worked so diligently and faithfully for almost 8 years.

13.     The hostile and discriminatory conduct from Ms. Shoemake, the General Manager, and other white employees was totally unwelcome and undesirable to Plaintiff.

14.     The conduct was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and created a racially, abusive, or hostile work environment.

15.     No other African American's were hired, although several applied, from the point of Ms. Shoemake's transferring the African-American daughter, against her will to another location

16 .     At or around the first time Plaintiff would have been eligible for a raise after Ms. Shoemake's arrival, Ms. Shoemake informed Plaintiff that, for the first time since he had been

hired, he would not receive any raise. Ms. Shoemake's reason that he would not be receiving a raise was that the prior General Manager, through no fault of his own, had not trained him properly.

17.     The failure of Ms. Shoemake to even evaluate Plaintiff's eligibility for a raise resulting in a loss of pay opportunity, is an adverse employment action . See...Dahlia v. Rodriguez, Passantino v. Johnson & Johnson Consumer Products Inc.

18.     On or about January 7, 2013, Plaintiff used the defendant's ethics hotline to register a complaint of discrimination on the basis of race against Ms. Shoemake for years of degrading, insulting, racist jokes and comments, and discriminatory employment practices such as any common man could evaluate and agree that her supervisory practices as a General Manager of the Defendant were nothing but racist and discriminatory, especially toward African-Americans. In making the complaint, Plaintiff  specifically stated that he wished to remain anonymous.

19.     Plaintiff's complaint using the ethics hotline was not reported to the defendant until March 29, 2013 to discuss the allegations.  Ms. Shoemke and the District Supervisor then met with the Plaintiff to discuss his complaint.

20.     Just one week after this meeting on April 5, 2013, Ms. Shoemake suspended Plaintiff, ostensibly pending an investigation into an incident in which Plaintiff had closed the restaurant several minutes before the actual closing time, turning away two customers and cursing in front of another employee.

21.     During the course of the investigation, Defendant learned that at least one other younger white Crew Manager, like Plaintiff had closed the restaurant early on more than one

-4-

occasion, Ms. Shoemake, acting by and for Defendant, terminated the Plaintiff, while allowing the younger white female to remain employed with only a verbal reprimand resulting in an enhancement of the age and racial hostile discriminatory work environment.

22.     Defendant attempted to differentiate the two by asserting the Plaintiff's incident resulted in customers being turned away and Plaintiff had cursed in front of another employee. However any such differentiation is mere pretext because Ms. Shoemake knew that others, including herself, had cursed in front of other employees and the younger white female had closed early on several occasions. The real reasons were: (1) Plaintiff's race, in violation of Title VII and the Tennessee Human Rights Act (THRA); (2) Plaintiff's age, in violation of the ADEA and the THRA; and (3) in retaliation for having complained about discrimination on the basis of race, in violation of Title VII and the THRA.

23.     Title VII makes it unlawful for a person to discriminate against an individual "because he has opposed any practice, made an unlawful employment practice, or because he has made a [complaint], testified, assisted, or participated in any manner in an [investigation] proceeding, or hearing. 42 U.S.C. 2000e-3 (a).

24.     Ms. Shoemake discouraged and threatened other employees from giving statements that supported Plaintiff in the course of the investigation resulting in his termination.

25.     Ms. Shoemake ignored statements that proved that Plaintiff did not close the restaurant early on more than one occasion and that he had not in fact, turned away customers and had not cursed in front of other employee's.

26.     Ms. Shoemake did not allow Plaintiff to give his version of the false and defamatory accusations leading up to his termination.

-5-

27.     Defendant's decision to fire Plaintiff on the basis of such an inadequate investigation demonstrates that the proffered reason for his termination was not "honestly held" and that the decision to fire him was in fact, based on Plaintiff's age and race as an African-American.

28.     Plaintiff was treated differently from the white employees.  The younger white female was permitted to curse employees in the presence of customers, close the restaurant substantially sooner than the assigned closing time, and use degrading racial slurs, taunts, and innuendo's with impunity.

29.     As a direct and proximate consequence of Ms. Shoemake's conduct and discriminatory managerial practices, Plaintiff was forced to endure a hostile working environment, being humiliated in front of employee's and customers and treated inferior to other white employees

30.     Based on information and belief, had Plaintiff been a white employee and younger than he was, he would not have been left to endure the hostile working environment and certainly would not have been terminated.

31.     Plaintiff was the victim of disparate treatment based on his age in addition to his race in violation of the ADEA 29 U.S.C. 626 et seq.

32.     Plaintiff's denial of a raise and/or promotion despite years of dedicated service is an element of an "adverse employment action" which is a component of retaliation.

33.     Plaintiff's termination constituted "a material change in the terms and conditions of his employment with the Defendant.

34. The Plaintiff was engaged in or was engaging in an activity protected under federal law, that is diligently performing his duties and responsibilities as an African-American employee of White Castle Systems, Inc.

35. As a direct and proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has lost his employment, including all emoluments thereof, was embarrassed and humiliated and otherwise suffered emotional and mental injuries.

## IV. PRAYER FOR RELIEF

Accordingly, Plaintiff prays:

A. For a jury to try this cause;

B. For an award of back pay and reinstatement, or, in the alternative to reinstatement, for front pay:

C. For an award of compensatory damages in an amount sufficient to make him whole;

D. For an award of punitive or liquidated damages sufficient to punish the wrong doer and act as a deterrent to future wrongdoing;

E. For an award of costs of fees, including but not limited to reasonable attorneys' fees pursuant to Title VII, the ADEA, and the THRA;

F. For such other and further relief as the court deems appropriate.

Respectfully Submitted,

Frank Neal

**FRANK NEAL**
206 Jennings Ave
Lebanon, TN 37087

# CERTIFICATE OF SERVICE

**Frank Neal v. White Castle Systems Inc.**

No. 3:14-cv-00216

**Judge Nixon**
**Magistrate Judge Bryant**

I hereby certify that a true and exact copy of the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT** has been served upon the Attorney for the Defendant by **U.S. Mail**, postage prepaid, addressed to:

**Teresa Rider Bult**
Constangy, Brooks & Smith, LLP
(Nashville Office)
Sun Trust Plaza
401 Commerce Street  Suite 700
Nashville, TN 37219

**Sally Ramsey**
Constangy, Brooks, & Smith, LLP
(Nashville Office)
Sun Trust Plaza
401 Commerce Street  Suite 700
Nashville, TN 37219

Frank Neal

**FRANK NEAL**
206 Jennings Avenue
Lebanon, TN 37087

On this 22nd day of May 2014.